**SUPERIOR FORM BUILDERS,**
Plaintiff,

v.

**DAN CHASE TAXIDERMY SUPPLY CO., INC., Dan Chase,**
**Defendants.**

No. 2:93cv940.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 16, 1994.

Lawrence Hunter Woodward, Jr., Gregory Albert Giordano, Shuttleworth, Ruloff, Giordano & Kahle, P.C., Virginia Beach, VA, Fleetwood Prince Butler, Griffin, Butler, Whisenhut & Kurtossy, Arlington, VA, for Superior Form Builders.

Frank Grey LaPrade, III, Amy Tredway Holt, John Washington Burke, III, McGuire, Woods, Battle & Boothe, Richmond, VA, Mark Steven Davis, McGuire, Woods, Battle & Boothe, Norfolk, VA, Earle Duncan Getchell, Jr., McGuire, Woods, Battle & Boothe, Richmond, VA, for Dan Chase Taxidermy Supply Co., Inc., Dan Chase.

Amy Tredway Holt, John Washington Burke, III, McGuire, Woods, Battle & Boothe, Richmond, VA, for Lilly Chase.

## MEMORANDUM OPINION

REBECCA BEACH SMITH, District Judge.

### I. Facts and Procedural History

Plaintiff filed this suit alleging copyright infringement by defendants. Plaintiff is the owner of four copyrights that have been registered with the United States Copyright Office for taxidermy forms or mannequins: two raccoons, a deer, and an otter. The forms are made through a multi-step process. First, the sculptor studies live animals. Then, he uses an animal carcass to make a plaster "death mask" for study purposes. He then sculpts an animal in a certain pose out of clay put over an armature. Next, the clay animal is made into a mold, which is used to create polyurethane copies of the

form. Plaintiff alleged that defendants, under the guise of a false name, ordered these four forms,[1] removed plaintiff's copyright notice, copied the forms, and placed their own copyright notice on the copies. Defendant Dan Chase admitted that he "utilized" plaintiff's forms but denied the copying.

Defendants moved for summary judgment on the grounds that these taxidermy forms were not properly copyrightable under the Copyright Act, which motion was denied by this court on May 10, 1994. The case proceeded to trial before a jury on May 12, 1994. On May 17, 1994, the jury returned a verdict in favor of plaintiff, awarding maximum statutory damages in the amount of $400,000.00. On June 16, 1994, plaintiff moved for an award of attorney's fees and submitted a memorandum in support of that motion. On June 30, 1994, defendants submitted a memorandum in opposition to the motion. A hearing was held on July 25, 1994. The motion for attorney's fees is now ripe for decision.

## II. Analysis

### A. Whether to Award

■ Section 505 of the Copyright Act provides that "[i]n any civil action under this title, the court in its discretion may ... award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The award of an attorney's fee to a prevailing party is thus within the trial court's discretion; however, such an award should not be made as a matter of course. *Fogerty v. Fantasy, Inc.*, — U.S. —, —, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994). In the Fourth Circuit, the rule is that a district court should look at four factors in deciding whether to award attorney's fees under section 505: "(1) 'the motivation of the parties,' (2) 'the objective reasonableness of the legal and factual positions advanced,' (3) 'the need in particular circumstances to advance considerations of compensation and deterrence,' and (4) 'any other relevant factor presented.'" *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.*, 21 F.3d 59, 61 (4th Cir.1994), *quoting Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir.1993). Applying these factors, the

court GRANTS plaintiff's motion for attorney's fees.

The first element to be taken into consideration is the motivation of the party from whom attorney's fees are sought. *Diamond Star*, 21 F.3d at 61. "While a finding of willful infringement or bad faith on the part of the opposing party may be considered by the district court, the presence or absence of such motivation is not necessarily dispositive." *Rosciszewski*, 1 F.3d at 234. In this case, the jury quickly found that defendants had acted willfully in infringing plaintiff's copyrights. Therefore, although it is not dispositive, this factor weighs heavily in favor of awarding attorney's fees to plaintiff.

The court must also consider the objective reasonableness of the legal and factual positions advanced by the parties, "whether the positions advanced were frivolous, on the one hand, or well-grounded in law and fact, on the other." *Id.* Defendants' legal position in this case was based on a copyright case from another federal district court in Alabama, which involved fish forms. Thus, defendants took a case from another jurisdiction, involving a completely different set of facts, and argued that this case was analogous to the case at bar and that this court was required to accept that opinion. While their position may not have been frivolous, it was definitely not well-grounded in law and fact. Furthermore, even after this court upheld the copyrightability of the taxidermy forms in this case, defendants persisted in their position that the forms were not copyrightable and continued to contest every aspect of the case, whether such argument was tenable or not. The court had to review repeatedly its previous legal rulings with defense counsel. Because the legal and factual positions of defendants were not objectively reasonable, particularly after the court denied summary judgment, this factor also weighs in favor of a fee award.

The next element to evaluate is the need to advance considerations of compensation and deterrence. *Id.* Defendant has been involved in copyright suits for years. In fact, there are currently suits pending against Mr.

---

1. Plaintiff sells the polyurethane forms to taxidermists, who use them for mounting skins.

Chase and his company in other jurisdictions for copyright infringement of this exact same type. Only substantial awards of damages as well as attorney's fees will deter Mr. Chase from continuing this willful and outrageous conduct. Moreover, the plaintiff deserves to be compensated for his attorney's fees. As a small businessman, it was very costly for him to retain the quality type of attorney that was needed to prosecute an intellectual property case. In short, considerations of compensation and deterrence justify an award of attorney's fees in this case.

Finally, the court may consider any other relevant factor. *Diamond Star*, 21 F.3d at 62. This case presented legal questions that were novel and complex. However, defendants made this case more difficult by their continued attempts during trial to confuse the jury with irrelevant and settled issues. If defendants had concentrated solely on the important issues in the case, trial could have been avoided; at the very least, the length of the trial could have been decreased. Being largely responsible for the amount of plaintiff's attorney's fees, it is only fair that defendants bear the cost of their actions by paying those fees.

## B. Amount of Award

■ The Supreme Court has instructed that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In order to define the variables for this calculation, which is also known as the lodestar figure, the court should consider the factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir.1986).[2] The factors in determining the

reasonable rate and the reasonable hours include:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fees; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Daly*, 790 F.2d at 1075 n. 2. If this formula results in a fee that is either unreasonably low or unreasonably high, the district court may then adjust the fee as necessary within the guidelines of the *Johnson* factors. *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

■ The determination of both the reasonable hourly rate and the reasonable number of hours expended requires separate consideration for each person billing hours to the client. The attorneys who appear on the itemized billing statements include: Gregory Giordano, a partner in the law firm of Shuttleworth, Ruloff, Giordano and Kahle, P.C. ("Shuttleworth, Ruloff"), Lawrence H. Woodward, an associate with Shuttleworth, Ruloff, and F. Prince Butler, a partner in the law firm of Griffin, Butler, Whisenhunt and Kurtossy, P.C. Pl's Mot. for Atty's Fees and Costs and Br.Supp. ("Pl's Mot. for Fees"), Exs. A, B. Several paralegals and a law clerk from Shuttleworth, Ruloff also appear on the billing statement. Pl's Mot. for Fees, Ex. A. As long as it is the practice of the attorney and the community to bill the client for the hourly work of employees such as law clerks and paralegals, then reasonable hourly

---

**2.** The Fourth Circuit adopted the *Johnson* factors as part of its lodestar analysis in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). However, the Fourth Circuit used these factors to enhance or decrease the award of attorney's fees. Following the Supreme Court's decision in *Blum v. Stenson*, 465 U.S. 886, 900–02, 104 S.Ct. 1541, 1549–51, 79

L.Ed.2d 891 (1984), the Fourth Circuit in *Daly* found that it had been misapplying the *Johnson* factors. *Daly*, 790 F.2d at 1077. Accordingly, the Fourth Circuit held that the *Johnson* factors should be considered in determining the lodestar figure, rather than in enhancing or decreasing fee awards after the lodestar figure had been calculated.

charges to the client for those persons are properly included as part of the attorney's fees award. *See Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989).

■ The party seeking attorney's fees bears the burden of "establish[ing] the reasonableness of the requested rate." *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir.1990). It is also required that, "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory 'specific evidence of the "prevailing market rates in the relevant community" for the type of work for which he seeks an award.'" *Id.* Plaintiff's attorneys have submitted detailed, itemized billing statements, their own affidavits, affidavits from Tidewater area attorneys and Northern Virginia area attorneys, 1993 Economic Survey Reports of billing rates and copyright litigation costs published by the American Intellectual Property Law Association, other news articles concerning the attorneys, and itemized expense statements. Defendants have not submitted any evidence with which the court could make a determination of a reasonable hourly rate or the reasonable number of hours spent on this case. In addition to considering materials submitted by the parties, the court may, on its own, review the billing statement for reasonableness. *See Spell v. McDaniel,* 616 F.Supp. 1069, 1085 (E.D.N.C.1985), *aff'd in part, vacated in part, on other grounds,* 824 F.2d 1380 (4th Cir.1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988).

### 1. *Johnson* factors

■ *Johnson* factors one, two, three, four, five, six, eight, nine, ten, eleven, and twelve pertain to the determination of the reasonable hourly rate and the reasonable hours spent in this case. *See Trimper v. City of Norfolk,* 846 F.Supp. 1295 (E.D.Va. 1994). The court will consider each relevant factor and its impact on the reasonable hourly rates or on the reasonable number of hours expended.

(1) *The time and labor required.* This copyright litigation has involved responding to a motion for summary judgment, rebutting a motion in limine, preparing for trial

through discovery, participating in a four day jury trial, responding to a motion for a new trial, and submitting an attorney's fee petition. This case necessitated the time and labor of three attorneys and assistance from paralegals and a law clerk. Plaintiff's attorneys have submitted affidavits, which certify the reasonableness of the hours spent on the case by the members of Shuttleworth, Ruloff. Brydges Aff. ¶ 3; Drescher Aff. ¶ 3; Weinberg Aff. ¶ 3. Similar affidavits from Northern Virginia attorneys verify that Mr. Butler's bill conformed to the "customary" charges. Baker Aff.; Burnam Aff. ¶ 7.

■ Mr. Giordano's experience in complex litigation and Mr. Butler's specialization in copyright law reduced the total time and labor required for this case. *See* Giordano Aff. ¶ 7; Butler Aff. This reduction in total number of hours supports awarding fees for the requested number of hours from both of these attorneys.

■ However, the court finds that several particular items on the itemized bill from Shuttleworth, Ruloff are not reasonable. Defendants challenge 2.5 hours spent by Mr. Giordano on November 22, 1993 for a pretrial conference as unwarranted. *See* Pl's Mot. for Fees, Ex. A. Based on the court's docket records, no pretrial conference occurred on that date. However, the billing statement description for those 2.5 hours also includes review of discovery and client letter activities by Mr. Giordano. Because the court concludes that those activities would reasonably consume 1 hour, the court will subtract only 1.5 hours from Mr. Giordano's total to correct that billing error.

■ The billing statement lists 0.3 hours taken by Mr. Woodward to review and sign an order for an extension of time. The referenced order contains only one short paragraph. A more reasonable estimate, based on the court's own experience, is 0.1 hours.

■ The Shuttleworth, Ruloff bill designates 26.5 hours as time spent digesting depositions by several paralegals. Because the attorneys attended the depositions, the time taken to summarize these documents is duplicative and not reasonable. The court will

subtract these hours from the ones included in the Shuttleworth, Ruloff billing statement.

■ Clerical tasks performed by various paralegals on April 6th, May 6th, 9th, and 10th consumed 12 hours. An attorney may not bill at his hourly rate for secretarial tasks just because he performs them. *See John-son,* 488 F.2d at 717. By analogy, just because paralegals have performed clerical tasks, such as photocopying and assembling binders, hours spent on these activities should not be billed at the paralegal's hourly rate. In the Shuttleworth, Ruloff billing statement, each time that clerical activities are listed, they appear in the same phrase as a description of paralegal time spent in preparation for the summary judgment hearing or for trial. Because the plaintiffs have not clearly identified how much time the paralegals allocated to each activity, the court will deduct half of the time expended by paralegals on April 6th, May 6th, 9th and 10th to account for clerical activities.

■ The bill also reflects a charge for paralegal time spent at trial. Although charges for paralegal assistance are permissible, these charges exceed what is reasonable because of the presence of two attorneys at each day of the trial. The billing statement description does not indicate that the paralegal did anything other than attend the trial. Plaintiff's attorneys have not met their burden in demonstrating the reasonableness of these hours, and the court determines that the presence of a paralegal at trial was superfluous.

■ Included in the billing statement are charges arising from research and other tasks performed by the law clerk. The law clerk expended 14 hours researching attorney's fees and 22.5 hours researching an advice of counsel issue and a new trial motion. Based on the facts and circumstances from this case, only one-half of those hours would ordinarily be required to research adequately those topics. Consequently, the total hours expended by the law clerk will be reduced by one half.

(2) *The novelty and difficulty of questions involved.* This litigation involved new and complex questions of copyright law, including the copyrightability of taxidermy forms, for which no precedent existed in the Fourth Circuit. In addition, the jury trial lasted four days and involved technical evidence concerning the creation of taxidermy forms. This factor favors the reasonableness of the requested hourly rates.

(3) *The skill requisite to perform the legal service properly.* This case required lawyers with particular skills in both the substantive area of copyright law and in complex litigation. Plaintiff properly employed lawyers with these separate skills and should collect fees for hours spent by both attorneys on this case.

(4) *The preclusion of other employment by the attorney due to the acceptance of the case.* Because of the time dedicated to thoroughly responding to defendant's motions, Mr. Giordano claims that other cases were put on the "back burner." In addition, Mr. Giordano's earnings depend on the number of cases for which he receives compensation. The fact that this case spanned ten months and consumed almost 280 hours of his time supports the reasonableness of an award at his regularly claimed rate.

(5) *The customary fee.* Affidavits support that the hourly rates for all employees billing from Shuttleworth, Ruloff were reasonable. Brydges Aff. ¶ 3; Drescher Aff. ¶ 3; Weinberg Aff. ¶ 3. In the 1993 Report of Economic Survey, Mr. Giordano's rate falls slightly below the median rate charged by partners in private law firms for both the East and Southeastern regions. Pl's Mot. for Fees, Ex. M. Defendants have not specifically objected to any of the hourly rates contained in the billing statements.

While affidavits support the overall reasonableness of the Shuttleworth, Ruloff billing statement, the affidavits do not address individually the specific qualifications or contributions of Mr. Woodward. On the 1993 Report of Economic Survey, Mr. Woodward's rate, as an associate in a private law firm, falls above the median rate for both the East and Southeastern regions. Pl's Mot. for Fees, Ex. M. By contrast, Mr. Giordano, who works for the same law firm, charges a rate which falls slightly below the median

figure on the same chart. A downward adjustment of Mr. Woodward's rate will reflect a more reasonable hourly rate, which corresponds to the rate level charged by this law firm.

Affidavits and the 1993 Report of Economic Survey support the reasonableness of the hourly rate charged by Mr. Butler for his intellectual property and copyright expertise. Baker Aff.; Burnam Aff. ¶ 7; Pl's Mot. for Fees, Ex. P. Mr. Butler charges the same $220.00 hourly rate to clients regardless of the market in which he provides representation. The court finds that the hourly rate charged by Mr. Butler conforms to the customary fees charged in such cases.

Plaintiffs have permissibly included the hourly charges for paralegals and law clerks in a request for attorney's fees. *See Jenkins*, 491 U.S. at 284, 109 S.Ct. at 2469–70. In this case, the affidavits generally support the fairness of the billing statement, without stating whether it is community practice to bill for these persons or what are the prevailing rates for law clerks or for paralegals. Defendants have offered no evidence to rebut the reasonableness of these rates. Based on the court's own experience, such charges conform to the practice of this community, and the rates charged for these persons are reasonable.

(6) *Whether the fee is fixed or contingent;* (10) *The "undesirability" of the case.* The court will apply *Johnson* factors six and ten to this case together. Plaintiff's attorneys accepted this case on a contingency basis. Plaintiff's attorneys claim that, while this case was not undesirable, it may have been undesirable to handle such a case based on a contingency fee. Giordano Aff. ¶ 8. Having accepted this case on a contingency basis, counsel expected fees to be awarded in this case in the event that the plaintiff prevailed. *See Johnson*, 488 F.2d at 716. The contingency arrangement favors awarding plaintiff's attorneys the requested value of their services, because they accepted this case with the possibility that they would not receive compensation.

(8) *The amount involved and the results obtained.* Plaintiff prevailed at the trial level and obtained $400,000.00, the maximum

amount of statutory damages for four copyright violations. Importantly, the case established plaintiff's right to compete in the taxidermy industry and his right not have his work pirated by suppliers. This determination favors an award at the requested hourly rates for the hours spent in realizing those results.

(9) *The experience, reputation, and ability of the attorneys.* Mr. Giordano enjoys a good reputation, and his ability is respected in the community. Giordano Aff. ¶ 5; Weinberg Aff. ¶ 4; Pl's Mot. for Fees, Ex. N. In the affidavits, the attorneys, including Mr. Giordano, also attest specifically to his experience in complex litigation. Giordano Aff. ¶ 3; Brydges Aff. ¶ 4; Drescher Aff. ¶ 4; Shumadine Aff. ¶ 4; Barr Aff. ¶ 4; Weinberg Aff. ¶ 4. Mr. Butler maintains an established practice in intellectual property law both in Northern Virginia and in Tidewater. Baker Aff; Burnam Aff. ¶ 6. The experience of these attorneys allowed them to deliver quality services for the time that they devoted to this case; this fact favors the reasonableness of the requested hourly rates for these two attorneys.

Additionally, this factor also favors a downward adjustment in Mr. Woodward's hourly rate. Plaintiff's attorneys assert that Mr. Woodward has ten years of litigation experience. However, no affidavits or other exhibits support a rate for Mr. Woodward in excess of the median rate for general litigation practice by an associate in a private law firm.

(11) *The nature and length of the professional relationship with the client.* Mr. Butler handled the initial filing of the plaintiff's copyrights. Despite this fact, the plaintiff did not receive a special rate from any of the attorneys involved with the case. Therefore, this factor does not affect the reasonableness of the requested rates.

(12) *Awards in similar cases.* Copyright awards vary depending on the particular facts of an individual case. *See* Nimmer, *The Law of Copyright* § 14.10[C] n. 19 (1991). Plaintiff's attorneys have attached the 1993 Report of Economic Survey to their brief, which indicates an $80,000.00 median charge

for copyright litigation through trial level for the Southeastern region. Although this charge does not directly reflect awarded amounts in copyright cases, it does incorporate the product of the hourly rate and the hours expended. This figure reflects the typical cost of such litigation to a client, and · plaintiff's requested amount resembles this median figure. Pl's Mot. for Fees, Ex. P.

Based on the above considerations, the following are reasonable rates, hours, and fees for each of the persons contributing to the attorney work product of this case:

| | Hours | × | Rate | = | Fee |
|---|---|---|---|---|---|
| Gregory Giordano, Esquire | 276.80 | | $175.00 | | $48,440.00 |
| F. Prince Butler, Esquire | 56.00 | | $220.00 | | $12,320.00 |
| Lawrence H. Woodward, Esquire | 49.10 | | $120.00 | | $ 5,892.00 |
| Kate McGrath (paralegal) | 15.00 | | $ 55.00 | | $ 825.00 |
| Carla Ellis (paralegal) | 0.00 | | $ 55.00 | | |
| Judi Sands (paralegal) | 0.00 | | $ 55.00 | | |
| Beverly Rebar (law clerk) | 18.25 | | $ 65.00 | | $ 1,186.25 |
| | | | | | |
| Total—Lodestar figure | | | | | $68,663.75 |

Counsel have agreed in a letter to the court to deduct the sum of $262.50 from the attorney's fees request. Letter dated August 17, 1994, from Gregory Giordano to the court, at 2 (no reason given for deduction in letter). This amount is therefore deducted from the lodestar figure so that the court awards a fee of $68,400.75, based on billable hours and for the reasons set forth above. Defendants have requested that the court make an award that is fair and just. To reach this decision, no additional consideration of the *Johnson* factors is required.

2. *Amount of costs*

 In determining an award of attorney's fees, "[l]itigation expenses, such as supplemental secretarial costs, copying, telephone costs, and necessary travel, are integrally related to the work of an attorney ..." and, thus, are compensable. *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623–24 (4th Cir.1978) (attorney's fees awarded as a part of costs in 20 U.S.C. § 1617 action); *Daly*, 790 F.2d at 1083 (attorney's fees awarded as a part of costs in 42 U.S.C. § 1988 action). This rule extends to awards of attorneys fees in copyright cases. *See* 17 U.S.C. § 505 (providing for "a reasonable attorney's fee to the prevailing party as a part of the costs."). In addition, because computer assisted research will reduce the number of hours an attorney must dedicate to a case, those charges comprise part of the costs. *Wehr v. Burroughs Corp.*, 619 F.2d 276, 284 (3d Cir.1980); *accord International Woodworkers v. Champion Int'l Corp.*, 790 F.2d 1174, 1185 (5th Cir.1986), *aff'd sub nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *but see Leftwich v. Harris–Stowe State College*, 702 F.2d 686, 695 (8th Cir. 1983).

Plaintiff requests reimbursement for such litigation expenses. Specifically, the billing statement from Shuttleworth, Ruloff reflects $4,911.56 in costs for filing, service, color graphics, federal express, photocopying, travel expenses, and transcripts. Pl's Mot. for Fees, Ex. Q. Mr. Butler's billing statement included charges for long distance telephone calls, telefax, photocopies, patent copies, certification fees, a Dun and Bradstreet report, computer research, and postage. Pl's Mot. for Fees, Ex. R. The expenses submitted by Griffin, Butler, Whisenhunt & Kurtossy, P.C. total $792.19.[3] *Id.*

---

3. Plaintiff's attorneys state that the expenses incurred by Prince Butler total $946.29; however, the expense statement from Griffin, Butler, Whisenhunt & Kurtossy, P.C. lists only $792.19 in

Defendants objected only to the inclusion of charges for the depositions taken. "A district court should award costs [for depositions] when the taking of a deposition is reasonably necessary at the time of its taking." *La Vay Corp. v. Dominion Fed. Savs. & Loan Ass'n,* 830 F.2d 522, 528 (4th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988). Defendants do not address any particular depositions that were not necessary.

Each deponent contributed to the strength of plaintiff's response to the defendant's summary judgment motion and to the plaintiff's case at trial. Witnesses interviewed by the plaintiff's attorneys assisted plaintiff's discovery by developing allegations of the complaint and by testifying to the artistic merit of the plaintiff's work and the taxidermy industry. Defendants also offer no support for the assertion that it is the custom and practice in this district only to allow deposition costs for complex litigation or other special situations. Costs of the depositions as well as other charges conform to those expenses reasonably associated with the cost of litigation.

The court finds that all items taxed as costs were reasonable, necessary, and related to the presentation of the case. Accordingly, the court reviewed Plaintiff's statements of expenses and the court finds the items therein to be reasonable. Therefore, the court awards costs of $5,703.75 to the Plaintiff.

### III. Conclusion

Upon a balancing of the factors relevant to the issue of attorney's fees as set out in *Diamond Star,* the court finds that an award of such fees in this case is justified. Therefore, plaintiff's motion for attorney's fees and costs is GRANTED in the amount of $74,104.50.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

