**Angela D. ESTES, Plaintiff,**

v.

**MERIDIAN ONE CORPORATION and Member Fax Program, Inc. (d/b/a "The Fax Pros"), Defendants.**

No. Civ.A. 99–34–A.

United States District Court, E.D. Virginia, Alexandria Division.

Nov. 30, 1999.

Martin P. Hogan, Alexandria, VA, for plaintiff.

Grady C. Frank, Jr., Alexandria, VA, for defendants.

### MEMORANDUM OPINION AND ORDER

LEE, District Judge.

This is a Family and Medical Leave Act ("FMLA") case where the employee sought and recovered an award of unpaid commissions earned while she was on leave. The precise question presented is whether an employee may recover earned

but unpaid commissions while on FMLA leave as a part of "other compensation denied or lost" as a result of discrimination. 29 U.S.C. § 2617(a)(1)(A)(i)(I).

Plaintiff alleges that she met her burden of proof under the FMLA, which affords an aggrieved employee the right to recover unpaid commissions as damages for "other compensation denied." *Id.* Defendants, on the other hand, contend that, because FMLA leave is unpaid, an employee has no right to recover commissions earned while out on such leave. They submit, therefore, that the Court erred in allowing the jury to consider and award Plaintiff damages for her earned but unpaid commissions.

Supported by these arguments, THIS MATTER comes before the Court on the following motions: (1) a Renewed Motion for Judgment as a Matter of Law ("RMJMOL") pursuant to Federal Rule of Civil Procedure ("FRCP") 50(b) submitted by Defendants Meridian One Corporation and Member Fax Program, Inc. ("Defendants"); (2) Plaintiff Angela D. Estes's ("Estes") Motion for Attorneys' Fees and Other Costs; and (3) two other post-trial motions submitted by the respective parties.[1]

There is no case law under the FMLA on this question. The Court reasons from a careful reading of the statute and pertinent regulation that Plaintiff is entitled to seek and recover unpaid commissions in this case as "other compensation denied" for the reasons stated below. Accordingly, the Court denies Defendants' RMJMOL, grants Plaintiff's motion for attorneys fees and costs, and denies all other post-trial motions submitted by the parties.

## I.  Background

Plaintiff Estes began her employment with Defendants on or around October 15, 1997. Up until her termination on June 1, 1999, she served as a Member Sales Agent, Service Manager, and Customer Service Administrator. Some five months after the commencement of the employment relationship with Defendants, on March 12, 1998, Ms. Estes was diagnosed with breast cancer. Eventually, the serious nature of her illness required the utilization of unpaid leave pursuant to the FMLA.[2] For example, as a result of her diagnosis, she underwent breast reconstruction surgery in late January 1999, requiring her to use FMLA leave from January 14, 1999 through February 11, 1999. She spent much of this time off undergoing pre-operative and post-operative testing relating to the cancer, as well as dealing with the mental and physical stress that develops naturally as a byproduct of such severe misfortune. Along the way, Ms. Estes supported her requests for FMLA leave with timely notice to Defendants[3] and doctors' certificates submitted for Defendants' review and approval.[4]

On January 14, 1999, Plaintiff Estes filed suit against Defendants, alleging substantive violations of the FMLA. *See generally* 29 U.S.C. §§ 2601–2619. Ms. Estes later supplemented her complaint to include allegations that Defendants retaliated against her for her use of FMLA leave. *See id.* § 2615(a)(2), (b)(1).

On September 21, 1999, after a full trial on the merits, a jury found in favor of Ms. Estes in the amount of $1,297.58.[5] The

---

1. While this opinion will address all of the aforementioned motions in turn, it will focus primarily on Defendants' RMJMOL and Plaintiff's motion for attorneys' fees.

2. From mid-October 1998 on, Ms. Estes used FMLA leave on an intermittent basis in connection with her health condition.

3. Plaintiff provided notice to Defendants about her January 22, 1999 breast reconstruction surgery on both November 24, 1998, and December 16, 1998.

4. Plaintiff faxed doctors' certificates dated January 12, 1999 to Defendants explaining the need for the time off from work related to her breast reconstruction surgery.

5. The jury verdict form read as follows:

   (1) Did the Plaintiff Angela Estes show by a preponderance of the evidence that Defendants discharged or in any other manner discriminated against her because of her request for leave, or because she used medical leave? [Answer:] Yes;

award was based on commissions earned by Ms. Estes during her FMLA leave that Defendants failed to pay out. Plaintiff now moves for $88,388.75 in attorneys' fees and $6,727.29 in costs arising out of the lengthy litigation.

In their FRCP 50(b) RMJMOL, Defendants dispute the propriety of the commissions award. They argue that, as a matter of law, such damages are not allowable under the FMLA, given the statute's apparent plain meaning and its history as leave without pay. Moreover, in their opposition to Plaintiff's motion for attorneys' fees, Defendants contend that, given the applicable case law, an award of attorneys' fees and costs in the amount sought by Plaintiff is excessive.

Plaintiff counters Defendants' contentions by highlighting portions of the FMLA, along with relevant provisions in the Code of Federal Regulations ("CFR"), that arguably support an award of commissions earned while an employee is on FMLA leave. *See, e.g., id.* § 2617(a)(1)(A)(i)(I); 29 C.F.R. § 825.215(c). Furthermore, Plaintiff defends her approximately $95,000.00 request for attorneys' fees and costs by substantively addressing the twelve-factor lodestar analysis adopted by the Fourth Circuit Court of Appeals for computation of reasonable attorneys' fees.[6]

## II. Defendants' Renewed Motion for Judgment as a Matter of Law pursuant to FRCP 50(b)

### A. Standard of Review

In order to assert a post-trial FRCP 50 motion, the moving party must first make a motion for judgment as a matter of law

prior to the case being submitted to the jury. *See* FED.R.CIV.P. 50(a), (b). In the present case, the Court finds that Defendants properly adhered to this procedural requirement.

Consequently, the Court must determine whether sufficient evidence exists in the record as a whole upon which a reasonable fact finder could properly return a verdict in favor of the prevailing party. *See id.; Herold v. Hajoca Corp.,* 864 F.2d 317, 319 (4th Cir.1988). In making this determination, the Court must view the evidence in the light most favorable to the prevailing party, *see Barrett v. Applied Radiant Energy Corp.,* 70 F.Supp.2d 644, 651–52 (W.D.Va.1999), and draw all reasonable inferences in favor of the prevailing party. *See Taylor v. Home Ins. Co.,* 777 F.2d 849, 854 (4th Cir.1985). The Court should not, however, weigh the evidence or assess the credibility of the witnesses. *See Herold,* 864 F.2d at 319. There must be a minimum of judicial interference with the jury. *See* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2524 (2d ed.1995).

In short, then, Defendants bear a heavy burden in establishing that the evidence is insufficient to uphold the jury's verdict. *See Price v. City of Charlotte,* 93 F.3d 1241, 1249 (4th Cir.1996). For them to succeed, the Court must determine that the "only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." *Winant v. Bostic,* 5 F.3d 767, 774 (4th Cir.1993) (citing *Hofherr v. Dart Indus., Inc.,* 853 F.2d 259, 261–62 (4th Cir.1988)).

(2) Did the Plaintiff Angela Estes show by a preponderance of the evidence that Defendants discharged or in any other manner discriminated against her because she filed a lawsuit under the FMLA on January 14, 1999, in the U.S. District Court for the Eastern District of Virginia? [Answer:] Yes;

(3) What amount of compensatory damages did the Plaintiff Angela Estes sustain as a result of Defendants' violation of the Family

and Medical Leave Act (FMLA)? Please specify. [Answer:]
  (a) lost wages (if any) = $0
  (b) unpaid commissions (if any) = $1,297.58
  (c) interest (if any) = $0

**6.** Despite Plaintiff's thorough discussion of this analysis, Defendants fail to address any of the lodestar factors in their opposition to Plaintiff's motion for attorneys' fees and costs.

## B. Analysis

The legislative history of the FMLA makes clear that, prior to its implementation, Congress found there was "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). In effectuating the statute, therefore, Congress sought to "entitle employees to take reasonable leave for medical reasons." *Id.* § 2601(b)(2). It sought to accomplish this goal "in a manner that accommodates the legitimate interests of employers," *id.* § 2601(b)(3), but also "minimizes the potential for employment discrimination ... by ensuring generally that leave is available for eligible medical reasons ... and ... compelling family reasons, on a gender-neutral basis." *Id.* § 2601(b)(4).

Taking into consideration congressional intent, the Court finds that Defendants have failed to establish that the evidence is insufficient to uphold the jury's verdict. One particular FMLA provision and a corresponding regulation strongly support this finding: 29 U.S.C. § 2617(a) and 29 C.F.R. § 825.215(c).

First, 29 U.S.C. § 2617(a) states that "[a]ny employer who violates [the FMLA] shall be liable to any eligible employee affected for damages equal to the amount of any *wages, salary,* employment benefits, *or other compensation denied or lost to such employee* by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I) (emphasis added). Although the unpaid commissions are admittedly not part of Ms. Estes's $25,000.00 base salary with Defendants, a reasonable fact finder could certainly have found that they constitute part of her overall compensation. Consequently, the jury's designation of the commissions as "other compensation" under the statute is consistent.

Second, providing further support for the jury's commissions award, 29 C.F.R. § 825.215(c) states that "[a] monthly production bonus ... does require performance by the employee. If the employee is on FMLA leave during any part of the period for which the bonus is computed, the employee is entitled to the *same consideration* for the bonus as other employees on *paid or unpaid leave* (as appropriate)." 29 C.F.R. § 825.215(c)(2) (emphasis added). While recognizing that this provision merely provides administrative support for the actual FMLA, when read in conjunction with 29 U.S.C. § 2617(a), it is highly persuasive—especially given the evidence presented at trial.

At trial, Plaintiff established that commissions for the sale of machines, services, service agreements, supplies, consumable items, equipment upgrades, and placement bonuses are calculated and paid on a monthly basis by Defendants. Thus, the analogy between "monthly bonuses" and "commissions" is evident.[7] Plaintiff also presented evidence of the commissions she earned during the monthly periods from late fall 1998 to early 1999—periods in which she utilized FMLA leave for only *part* of the monthly commissions pay periods.

Moreover, both the regulation, *see id.,* and precedential disparate treatment law, *see generally, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), call on Defendants to afford Ms. Estes the same consideration for monthly bonuses and/or commissions as "similarly situated" employees of Defendants—whether the other employees used paid or unpaid leave. This, the Defendants did not do.

In support of this charge, Plaintiff provided evidence at trial of commissions re-

---

7. The definitions of "compensation" and "commission" are helpful to understanding this analogy. While neither are defined in the FMLA itself, *see* 29 U.S.C. § 2611, the common definitions for the two words are appropriate here to depict the type of compensation Plaintiff received from Defendants on a monthly basis. Compensation is "[s]omething given or received as payment ... for a service." THE AMERICAN HERITAGE DICTIONARY 301 (2d college ed.1991). Commission is defined as a "fee or percentage allowed to a salesman or agent for his services." *Id.* at 297.

ceived by two similarly situated employees—Ms. Donna Hicken ("Hicken") and Mr. Wilmer Putz ("Putz").[8] As with Ms. Estes, both received commissions as part of their overall compensation package with Defendants. Ms. Hicken and Mr. Putz, however, continued to receive commission payments while out of work on paid or unpaid leave. As a practical matter, this makes sense. Work done in connection with an account often occurs at different times during any given month, including prior to, and after return from, paid or unpaid leave. Commissions could also be due an employee who brings in a new client or maintains a current client account already in place prior to seeking leave. Yet, Defendants refused to pay Ms. Estes earned commissions in a similar fashion to Ms. Hicken and Mr. Putz. They argued that Ms. Estes was not similarly situated to the other two employees because neither of them specifically used FMLA leave during the time they were paid commissions, as Ms. Estes did. But this is precisely the distinction drawn by 29 C.F.R. § 825.215(c)—"the employee is entitled to the same consideration for the bonus as *other employees* [Ms. Hicken and Mr. Putz] *on paid or unpaid leave.*" 29 C.F.R. § 825.215(c)(2) (emphasis added).

Furthermore, disparate treatment with regard to the payment of earned commissions, such as that imposed on Ms. Estes, undoubtedly falls within the ambit of the phrase "*discharge or in any other manner discriminate* against any [employee]" for either opposing any practice made unlawful by the FMLA or instituting any proceedings related to the FMLA. 29 U.S.C. § 2615(a)(2), (b)(1) (emphasis added). By her presentation of evidence, Plaintiff succeeded in "persuading the [jury] that a discriminatory reason more likely motivated" Defendants' personnel actions against Plaintiff than the reasons proffered by Defendants in court. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256,

101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In the eyes of the jury, Defendants' reasons were essentially "unworthy of credence" and served as a pretext for their actual motivation. *Id.*

Accordingly, given the combination of the two provisions, the evidence adduced at trial, and applicable disparate treatment precedent, the Court finds that a reasonable fact finder could properly return a verdict in favor of Plaintiff.

### III. Plaintiff's Motion for Attorneys' Fees and Costs

When a plaintiff establishes a violation of the FMLA, the statute mandates an award of attorneys' fees in addition to the judgment granted by the jury. *See* 29 U.S.C. § 2617(a)(3). Specifically, the statute provides that "[t]he court in such an action [in which a violation is established] *shall,* in addition to any judgment awarded to the plaintiff, allow a *reasonable* attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." *Id.* (emphasis added). Given this mandate, an assessment of reasonable attorneys' fees for Plaintiff's counsel, Mr. Martin P. Hogan ("Hogan"), is both appropriate and necessary in the present case.

In *Barber v. Kimbrell's, Inc.,* the Fourth Circuit adopted the factors articulated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974), for the determination of reasonable attorneys' fees.[9] *See Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978) As a result, an analysis of the following twelve factors must guide this Court's discretion in calculating such a fee award: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant

---

8. Mr. Putz worked with Ms. Estes in Defendants' Service Department.

9. This calculation is also known as the "lodestar" analysis. *See Superior Form Builders v. Dan Chase Taxidermy Supply Co.,* 881 F.Supp. 1021, 1025 n. 2 (E.D.Va.1994).

litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees in similar cases. *See id.* at 226 n. 28.

■ Taking into consideration these twelve factors, however, the Court acknowledges that it is empowered with broad discretion to adjust even a mandatory grant of attorneys' fees to account for the limited nature of a jury award. *See McDonnell v. Miller Oil Co.,* 134 F.3d 638, 641 (4th Cir.1998) For example, the Court may decrease the amount of fees that might otherwise be awarded in order to account for a plaintiff's limited success. *See Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 627, 629–30 (4th Cir.1995). The United States Supreme Court has stated, quite succinctly, that the most critical factor in accounting for a reasonable fee award is the degree of success obtained. *See Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). When a plaintiff has achieved only limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. *See id.*

■ With this in mind, Plaintiff requests that the Court direct Defendants to pay attorneys' fees in the amount of $88,-388.75, and costs in the amount of $6,727.29. While the Court agrees with Plaintiff that factors seven and ten, *supra,* are not applicable in the instant case, the remaining ten factors are essential to the ultimate calculation of reasonable attorneys' fees. As such, each will be addressed in turn.

### A. Factors 1–3

To begin the analysis, the Court acknowledges that Plaintiff's attorney spent an inordinate amount of time litigating the present controversy, including the filing of countless pleadings, the taking of depositions, and the preparation of over 600 trial exhibits and several witnesses. Furthermore, the questions presented in the case were relatively difficult and had not been litigated extensively due to the FMLA's youth. These questions, therefore, required arduous research into both the scarce case law and the pertinent administrative regulations. Under these circumstances, Plaintiff's attorney demonstrated an admirable amount of skill and persistence in addressing the questions on behalf of his client.

### B. Factors 4–6

■ There can be no question that opportunity costs in pressing the present litigation were high. With the extremely litigious nature of the parties, and 421.75 hours logged on this matter alone, undoubtedly, Plaintiff's attorney could have spent much of this time on the solicitation and/or representation of other clients. Moreover, as shown in the exhibits attached to the memorandum in support of Plaintiff's attorneys' fees motion, Mr. Hogan's working rate of $175.00 per hour is reasonable for associates in the Washington, D.C. metropolitan area with eight years of legal experience.[10] See Pl.'s Mem.Supp.Mot. Att'ys' Fees Exs. 2–4. And while the ultimate expectation of Plaintiff's attorney at the outset of the controversy is quite unclear from the record, it would be difficult for most attorneys under similar circumstances to calculate approximate fees and costs for FMLA litigation.

### C. Factors 8–9

The amount in controversy in the present case is also relatively difficult to glean

---

**10.** Similarly, the fees charged for his assistants, Ms. Kim and Mr. Heath, at $30.00 per hour and $50.00 per hour respectively, were also very reasonable.

from the pleadings. This task is made more difficult by the fact that the last 1,000 pages of documents requested by Plaintiff were not supplied by Defendants until about a week and a half before trial. Yet the results ultimately obtained in the case are indeed calculable—$1,297.58 awarded by the jury to Plaintiff. The Court will consider the jury award in its final calculation of attorneys' fees and costs.

Regarding the experience, reputation, and ability of Plaintiff's attorney, the Court finds uncontroverted evidence in the record of Mr. Hogan's eight years of practice experience, his handling of three other FMLA cases in addition to the present one, and his fine record of arbitration representations and awards.

### D. Factors 11–12

Lastly, because Plaintiff was a new client for Mr. Hogan and his firm, it is reasonable to assume that Mr. Hogan spent a relatively significant amount of time preparing her for trial. While the Court concedes that this is not the most important factor for consideration in the *Johnson* analysis, Plaintiff's claim here is uncontroverted and, thus, given some deference by the Court.

More important, however, is the Court's consideration of attorneys' fees awards given in similar cases. Plaintiff cites a series of cases supporting her contention that over $95,000.00 in fees and costs is acceptable under the FMLA, the most influential being *McDonnell v. Miller Oil Co.*, 134 F.3d 638 (4th Cir.1998). There, the district court, on remand, applied the *Johnson* factors in an FMLA case, adding $10,000.00 in attorneys' fees and costs to a paltry $2.10 jury award.

### E. The Court's Assessment

Combining the Court's analysis of the *Johnson* factors with the discretion afforded it by both the Fourth Circuit and the United States Supreme Court, the Court hereby grants Plaintiff attorneys' fees in the amount of $70,711.00, along with $5,381.83 in costs.[11] This substantial award reflects Mr. Hogan's considerable work in the case, his accurate record keeping as submitted to the Court for review, and Defendants' failure altogether to address the *Johnson* lodestar analysis in their opposition brief. The twenty percent reduction from the amount ultimately requested by Plaintiff in her motion reflects, in part, the Court's consideration of Plaintiff's moderate success with the jury and the litigious nature of both parties in the case.

### IV. Other Post–Trial Motions

Finally, in addition to the motions discussed *supra*, the parties have propounded two other post-trial motions: (1) Plaintiff's Motion for Liquidated Damages; and (2) Defendants' Motion for Order Directing the Clerk to Remove Plaintiff's Reply to Defendants' Opposition to Attorneys' Fees and Costs. The Court finds both of these motions to be without merit.

### V. Conclusion

For the reasons set forth above, Defendants' Renewed Motion for Judgment as a Matter of Law is DENIED, Plaintiff's Motion for Attorneys' Fees and Other Costs is GRANTED in the amount of $76,092.83, and the remainder of the parties' post-trial motions are DENIED.

---

**11.** Adding the two numbers together, the total assessment of attorneys' fees and costs awarded to Plaintiff is $76,092.83.