**NORTH CAROLINA ALLIANCE FOR TRANSPORTATION REFORM, INC.; and Friends of Forsyth County, an unincorporated association; Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF TRANSPORTATION; Rodney E. Slater, Secretary of United States Department of Transportation; Federal Highway Administration; Kenneth R. Wykle, Administrator, Federal Highway Administration; Nicholas L. Graf, Division Administrator, Federal Highway Administration; North Carolina Department of Transportation; and E. Norris Tolson, Secretary, North Carolina Department of Transportation; Defendants.**

No. 1:99CV00134.

United States District Court,
M.D. North Carolina.

Aug. 23, 2001.

---

Marsh Smith, Cunningham Dedmond Petersen & Smith, Southern Pines, NC, Bruce J. Terris, Sarah A. Adams, Demian A. Schane, Terris Pravlik & Millian, LLP, Washington, DC, for North Carolina Alliance for Transportation Reform, Inc., Friends of Forsyth County, an unincorporated association, plaintiffs.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, for United States Department of Transportation, Rodney E. Slater, Secretary, United States Department of Transportation, Federal Highway Administration, Kenneth R. Wykle, Administrator, Federal Highway Administration, Nicholas L. Graf, Division Administrator, Federal Highway Administration.

Elizabeth Leonard McKay, N.C. Department of Justice, Attorney General's Office, Raleigh, NC, for North Carolina Department of Transportation, E. Norris Tolson, Secretary, North Carolina Department of Transportation, defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This matter is before the court on a motion by Plaintiffs North Carolina Alliance for Transportation Reform, Inc., and Friends of Forsyth County for attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and North Carolina General Statute ("N.C.Gen.Stat.") § 6–19.1. For the following reasons, the motion will be granted

as to Federal Defendants[1] pursuant to 28 U.S.C. § 2412(b). Plaintiffs' motion will be denied as to State Defendants,[2] because the Eleventh Amendment bars an award of attorneys' fees by a federal court based on N.C.Gen.Stat. § 6–19.1.

## BACKGROUND

This suit commenced on February 18, 1999 when Plaintiffs filed a complaint seeking to enjoin the construction of a proposed beltway section around Winston–Salem, North Carolina. Plaintiffs alleged violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* and the North Carolina Environmental Policy Act ("NCEPA"), N.C.Gen.Stat. § 113A–1 *et seq.* These allegations were based on the purportedly inadequate preparation of the final environmental impact statement ("FEIS") and improper approval of the record of decision ("ROD") for the beltway section.

Shortly after commencement of the lawsuit, Federal Defendants revoked their approval of the beltway section, and on June 21, 1999, all parties jointly moved for dismissal. On June 29, 1999, this court issued an order of dismissal. Plaintiffs subsequently filed a motion for attorneys' fees and expenses. Plaintiffs sought fees and expenses from Federal Defendants under Sections 2412(b) and 2412(d) of the EAJA and from State Defendants under N.C.Gen.Stat. § 6–19.1. Section 2412(b) of the EAJA states:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b). Section 2412(d) of the EAJA provides in part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). North Carolina General Statute § 6–19.1 provides:

> In any civil action, other than an adjudication for the purpose of establishing or fixing a rate, or a disciplinary action by a licensing board, brought by the State or brought by a party who is contesting State action pursuant to G.S. 150B–43 or

---

**1.** Federal Defendants include the United States Department of Transportation; the Secretary of Transportation, Rodney E. Slater; the Federal Highway Administration ("FHWA"); the Administrator of the FHWA, Kenneth R. Wykle; and the Administrator of the North Carolina Division of the FHWA, Nicholas L. Graf.

**2.** State Defendants include the North Carolina Department of Transportation ("NCDOT") and the Secretary of NCDOT, E. Norris Tolson. The Secretary of the NCDOT has changed since commencement of this lawsuit and is now Lyndo Tippett.

any other appropriate provisions of law, unless the prevailing party is the State, the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency if:

> (1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and
>
> (2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust.
>
> . . . .
>
> Any attorney's fees assessed against an agency under this section shall be charged against the operating expenses of the agency and shall not be reimbursed from any other source.

N.C.Gen.Stat. § 6–19.1.

Following a hearing on the issue of whether Defendants were substantially justified in preparing the FEIS and approving the ROD for the proposed beltway section, the court issued a memorandum opinion on June 4, 2001. In that opinion the court determined that Federal Defendants acted in bad faith by approving the ROD only one day after its submission.[3] Based on this bad-faith conduct, the court found Federal Defendants liable for attorneys' fees and expenses under 28 U.S.C. § 2412(b). The court also determined that Plaintiffs were "prevailing parties," that Defendants' preparation of the FEIS was not substantially justified, and that no spe-cial circumstances existed that would make an award of attorneys fees and expenses unjust. In light of these determinations, the court found that Plaintiffs had satisfied the substantive requirements for attorneys' fees under both 28 U.S.C. § 2412(d) and N.C.Gen.Stat. § 6–19.1.[4] Before granting fees and expenses against either of the Defendants, the court requested and received additional briefing on the issues of Eleventh Amendment immunity for State Defendants and the amount of fees and expenses sought by Plaintiffs.

## ANALYSIS

■ The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." Although not expressly provided the Eleventh Amendment also limits federal jurisdiction in actions brought against a state by the state's own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Furthermore, the Eleventh Amendment prohibits suit against a state in federal court based on the state's laws *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Eleventh Amendment immunity, however, is not absolute. The Eleventh Amendment does not prohibit actions against state officials in federal court

---

3. The approval of the ROD occurred one day after its submission and one day prior to an announcement of non-conformity with the Clean Air Act. Had Federal Defendants not approved the ROD prior to the announcement of non-conformity, federal funding for the beltway project would have been prohibited.

4. The analysis under 28 U.S.C. § 2412(d) was not required, as the court found Federal De-fendants liable for attorneys' fees and expenses under 28 U.S.C. § 2412(b). A discussion of Section 2412(d) was included in the opinion, however, because the analysis under that provision of federal law is essentially the same as the analysis under N.C.Gen.Stat. § 6–19.1, which the court undertook to determine the potential liability of State Defendants.

when the plaintiff seeks prospective injunctive or declaratory relief based on federal law. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Eleventh Amendment immunity also may be waived, allowing a state to be sued for damages in federal court. A state's waiver of Eleventh Amendment immunity alters the carefully constructed separation of federal and state authority. As a result, any waiver must be made unequivocally and will be narrowly construed by the court. *See id.* at 673, 94 S.Ct. 1347.

■ Plaintiffs do not argue that they could have brought an action against State Defendants in federal court for alleged violations of NCEPA, a state statute. Instead, Plaintiffs contend that the Eleventh Amendment does not bar an action against State Defendants in federal court based on alleged violations of NEPA, a federal statute. *See Arlington Coalition on Transp. v. Volpe,* 458 F.2d 1323, 1329 (4th Cir.1972) (finding jurisdiction against state defendant where NEPA required reconsideration of alternative highway sites). Assuming, *arguendo,* that Plaintiffs' contention is correct (that NEPA provides jurisdiction for a cause of action against State Defendants in federal court), the issue presently before the court is whether a federal court may award attorneys' fees and expenses against State Defendants pursuant to N.C.Gen.Stat. § 6–19.1, a state fee-shifting statute, where the underlying action was based on alleged violations of NEPA, a federal statute. Plaintiffs do not dispute that this court has jurisdiction to grant such an award against State Defendants only if North Carolina has waived its Eleventh Amendment immunity with regard to an award of attorneys' fees under N.C.Gen.Stat. § 6–19.1. *See Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900 (Without a waiver of Eleventh Amendment immunity, "it is difficult to think of a greater intru-

sion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

The Supreme Court has stated that "[i]n deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman,* 415 U.S. at 673, 94 S.Ct. 1347 quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909). Plaintiffs suggest that N.C.Gen. Stat. § 6–19.1 waives Eleventh Amendment immunity by providing that "[i]n any civil action ... brought by the State or brought by a party who is contesting State action pursuant to G.S. 150B–43 [the North Carolina Administrative Procedure Act] *or any other appropriate provisions of law* ... the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees." N.C.Gen.Stat. § 6–19.1 (emphasis added). Plaintiffs contend that the Federal Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* which is the vehicle for bringing a suit for alleged NEPA violations, constitutes one of the "other appropriate provisions of law" referred to in N.C.Gen.Stat. § 6–19.1. According to this position, Section 6–19.1 waives Eleventh Amendment immunity and permits the imposition of fees against State Defendants by a federal court based on an underlying federal cause of action.

■ The court will not abrogate State Defendants' Eleventh Amendment immunity based on the equivocal language of N.C.Gen.Stat. § 6–19.1. As stated by the Supreme Court:

[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation. Nor does it consent to suit in federal

court merely by stating its intent to sue or be sued, or even by authorizing suits against it in any court of competent jurisdiction.

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (internal quotations and citations omitted). A waiver of Eleventh Amendment immunity must be clearly declared by the state. *See id.* at 676, 119 S.Ct. 2219. The language of Section 6–19.1 does not expressly waive the state's Eleventh Amendment immunity; nor does it eliminate "any other reasonable construction." *Edelman*, 415 U.S. at 673, 94 S.Ct. 1347. North Carolina General Statute § 6–19.1 can be read to allow an award of attorney's fees to a party contesting State action pursuant to "any other appropriate provision of *state* law" or pursuant to "any other appropriate provision of *state or federal* law." The statute's express language does not delineate the precise provisions of law pursuant to which attorneys' fees may be assessed against the state. Some limitation on the award of attorneys' fees is maintained by the statute, though, as it allows for fees only when State action is challenged pursuant to an "appropriate" provision of law. Whether the Federal Administrative Procedure Act or any other federal statute constitutes an "appropriate" provision of law is unclear from the language of Section 6–19.1.

Furthermore, construing Section 6–19.1 as a waiver would be a significant extension of both state and federal case law. No federal court has previously granted an award of attorney's fees pursuant to Section 6–19.1. A survey of cases from North Carolina courts indicates that the phrase "any other appropriate provisions of law" has been applied to allow attorneys' fees exclusively in cases involving other provisions of North Carolina law. *See, e.g., Able Outdoor, Inc. v. Harrelson*, 341 N.C.

167, 459 S.E.2d 626 (1995) (granting attorney's fees under Section 6–19.1 where the underlying action was brought pursuant to the judicial review provision of the North Carolina Outdoor Advertising Control Act, N.C. Gen.Stat. § 136–134.1).

In sum, the language of N.C.Gen.Stat. § 6–19.1 does not indicate a clear intent on behalf of the State to waive Eleventh Amendment immunity. In fact, there is some indication from the language of the statute that the State expected to limit the underlying causes of action that would support an award of attorneys' fees. Moreover, no existing case law interprets Section 6–19.1 as waiving Eleventh Amendment immunity. Based on the ambiguous language of the statute, the court will not construe Section 6–19.1 as waiving Eleventh Amendment immunity. Consequently, Plaintiffs' request for attorneys' fees from State Defendants will be denied.

■ Although the Eleventh Amendment precludes an assessment of attorneys' fees against State Defendants Federal Defendants remain liable for fees under the EAJA. Plaintiffs contend that despite State Defendants' immunity, Plaintiffs are entitled to their full fees because of Federal Defendants culpability and because the nature of the litigation renders it impossible to divide the time expended by Plaintiffs' counsel between State and Federal Defendants. As to culpability, Plaintiffs point out that Federal Defendants were the sole actors in improperly approving the ROD. Furthermore, Plaintiffs note that Federal Defendants worked jointly with State Defendants in preparing the FEIS, which the court determined to be inadequate. With regard to a division of time expended by Plaintiffs' counsel between State and Federal Defendants, Plaintiffs argue that the case would have required essentially the same amount of work even

if State Defendants had not been included as a party. Plaintiffs assert that the primary reason for including State Defendants in the action was to enjoin the State from acquiring property located in the proposed path of the beltway. The inclusion of State Defendants otherwise had a negligible effect on Plaintiffs' litigation strategy or the amount of work performed. For these reasons, Plaintiffs argue that they should receive the full amount of the requested fees even though no fees are available from State Defendants. Federal Defendants do not address the issue of whether the award of attorneys' fees should be reduced based on an allocation of liability between Federal and State Defendants. Instead, Federal Defendants focus on the reasonableness of the billing rate and the number of hours Plaintiffs expended on the litigation and on a potential statutory limitation to Plaintiffs' fee award.

▮ The court has wide discretion to determine the amount of attorneys' fees. *Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 628 (4th Cir.1995). This discretion extends to the allocation of attorneys' fees. *Koster v. Perales,* 903 F.2d 131, 139 (2d Cir.1990) ("The allocation of fee liability is a matter committed to the district court's discretion and will not be disturbed unless the determination evidences an abuse of discretion."). In cases allocating attorneys' fees, courts have focused on "the relative culpability of the parties and the proportion of time spent litigating against each defendant." *Id.* (citations omitted). As noted above, Federal Defendants were at least as culpable as State Defendants in preparing the inadequate environmental analysis and granting cursory approval of the beltway project.

Federal Defendants acted alone in approving the ROD in one day, the conduct that constitutes the basis for an award of attorneys' fees under 28 U.S.C. § 2412(b). In addition, Federal and State Defendants worked together in preparing the flawed FEIS. Therefore, relative culpability provides no basis for reducing the amount of attorneys fees assessed against Federal Defendants. In addition, the vast majority of time Plaintiffs expended in litigating the present matter is not apportionable between the State and Federal Defendants. Most of Plaintiffs' time was spent examining and analyzing the FEIS, preparing the complaint, preparing a motion for a temporary restraining order and preliminary injunction to prevent the commencement of beltway construction, and litigating for attorneys' fees. Plaintiff would have undertaken these same actions with or without the presence of State Defendants.[5] Where the court can discern from the billing records submitted by Plaintiffs specific time periods spent researching or litigating issues related exclusively to State Defendants, the court will reduce the amount of fees awarded against Federal Defendants. Due to the extent of Federal Defendants' culpability and the general indivisibility of Plaintiffs' time spent litigating against Federal and State Defendants, the court will not reduce attorneys' fees against Federal Defendants based on an overall allocation of fee liability.

▮ In determining the amount of attorneys' fees, the "most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The product

**5.** Plaintiffs have not requested fees for time spent briefing the issue of State Defendants' Eleventh Amendment immunity.

of the hourly rate and the hours expended is known as the lodestar figure. Subsumed in the calculation of the lodestar are several factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19; *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978) (adopting the twelve factors set forth in *Johnson* ).

In the June 4, 2001, memorandum opinion issued by this court, Federal Defendants were found liable for attorneys' fees under 28 U.S.C. § 2412(b). Alternatively, the court found Federal Defendants liable for attorneys' fees under 28 U.S.C. § 2412(d). The court undertook the Section 2412(d) analysis only because the analysis under that provision is essentially identical to the analysis under N.C.Gen. Stat. § 6–19.1, which was required to determine State Defendants' potential liability. The amount of fees permitted under Section 2412(b) differs from that allowed under Section 2412(d). Section 2412(b) provides that the court may award "reasonable fees and expenses of attorneys ... to the prevailing party in a civil action brought by or against the United States." 28 U.S.C. § 2412(b). This provides for an award of fees at market rates, adjusted upward or downward based on the twelve

*Johnson* factors. *See Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir.1990) ("[T]he [Supreme] Court has ... emphasized that market rate should guide the fee inquiry."). In contrast, Section 2412(d) states that a court shall award to a prevailing party "fees and other expenses ... incurred by that party." 28 U.S.C. § 2412(d)(1)(A). Fees and expenses awarded pursuant to Section 2412(d)(1)(A) are statutorily capped at $125.00 per hour and are further limited to those "incurred" by the prevailing party. 28 U.S.C. § 2412(d)(2). This means that any contractual fee arrangement between Plaintiffs and Plaintiffs' counsel could reduce the amount of fee award permitted under Section 2412(d). *See TGS Int'l, Inc. v. United States*, 983 F.2d 229, 230 (Fed.Cir. 1993) ("In its requirement that fees have been 'incurred' by the party, § 2412(d) differs from § 2412(b) and other fee-shifting statutes that authorize the award of 'a reasonable attorney's fee.' ")

Plaintiffs' counsel did not charge Plaintiffs prevailing market rates for their services. Instead, Plaintiffs' counsel charged a flat hourly rate of $135.00 with a total cap on attorneys' fees set at $40,000.00. Plaintiffs' attorneys charged the discounted billing rate with the hope of recovering more complete remuneration under one of the applicable fee-shifting statutes if Plaintiffs ultimately prevailed.

Federal Defendants argue that the award of attorneys' fees should be limited based on the contractual arrangement between Plaintiffs and Plaintiffs' attorneys. Under this arrangement, $40,000.00 constitutes the maximum fees that could have been incurred by Plaintiffs, and Federal Defendants contend that this should be the maximum award granted by the court. If the court were granting fees solely pursuant to Section 2412(d), Federal Defen-

dants' argument might prevail. Federal Defendants' liability under Section 2412(d), however, was an alternative holding to the finding of liability under Section 2412(b). Section 2412(b) has no statutory limitation on hourly rate or requirement that fees were actually incurred by the plaintiff. It provides simply for "reasonable fees and expenses." 28 U.S.C. § 2412(b). Therefore, the court will not determine the amount of attorneys' fees based solely on fees actually incurred or on a statutory maximum billing rate. *See Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (not limiting an award of "reasonable" attorney's fees to the amount provided for in a contingency arrangement). Instead, the court will undertake an analysis, as directed in *Hensley v. Eckerhart*, to determine "reasonable fees and expenses." The fee contract between Plaintiffs and Plaintiffs' counsel constitutes just one element in the determination of reasonable fees. *See Johnson*, 488 F.2d at 718 (listing "whether the fee is fixed or contingent" as one of the twelve factors in determining the amount of attorney's fees).

Because Plaintiffs' counsel did not charge Plaintiffs (and apparently does not charge any of its clients) prevailing market rates for its services, it has presented the court with a set of hourly rates derived from a billing matrix first introduced in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C.1983), *aff'd in part*, 746 F.2d 4 (D.C.Cir.1984), *overruled in part on other grounds, Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d

1516, 1525 (D.C.Cir.1988) (*en banc*). The matrix, known as the *Laffey* matrix, was endorsed by the Court of Appeals for the District of Columbia Circuit in *Save Our Cumberland Mountains* and has been used consistently by district courts within the District of Columbia. *See Save Our Cumberland Mountains*, 857 F.2d at 1525 ("We do not intend ... to diminish the value of the fee schedule compiled by the District Court in *Laffey*. Indeed, we commend its use for the year to which it applies."); *see also Covington v. District of Columbia*, 839 F.Supp. 894, 898 & n. 9 (D.D.C.1993) (using, and citing six other cases which used, the *Laffey* matrix to determine the amount of attorney's fees). The Fourth Circuit has not specifically endorsed use of the *Laffey* matrix, but in *Cooper v. Paychex Inc.*, 1998 WL 637274 (4th Cir. Aug.31, 1998) (unpublished), the court stated that "a trial court determining what fee to award may take into account a fee schedule like the *Laffey* court did." *Cooper*, 1998 WL 637274 at *13. Plaintiffs employ the *Laffey* matrix as a starting point to establish market rates in the Washington, D.C., area, where Plaintiffs' counsel's firm is located. The *Laffey* matrix is current through May 31, 1989, so Plaintiffs adjust the matrix's billing rates by applying the annual inflationary factor for legal services as reported in the United States Department of Labor's Consumer Price Index ("CPI").[6] Plaintiffs contend that the resulting billing rates constitute current market rates for the Washington, D.C., market. The following chart shows the resulting rates:[7]

---

6. The Fourth Circuit has implicitly supported the use of the legal services compenent of the CPI, rather than the general CPI itself, for determining attorney's fees under 28 U.S.C. § 2412(b). *See Sullivan v. Sullivan*, 958 F.2d 574, 577 & n. 8 (4th Cir.1992) (distinguishing between the inflationary index used to calculate fees under Sections 2412(d) and 2412(b)).

7. Although inflationary factors would dictate higher rates for work performed after May 31, 2001, Plaintiffs have requested the 6/1/00–5/31/01 rates for all work performed after May 31, 2001.

| Years out of Law School | Hourly Rates for Work Performed | | |
|---|---|---|---|
| | 6/1/98–5/31/99 | 6/1/99–5/31/00 | 6/1/00–5/31/02 |
| 20+ | $424 | $444 | $466 |
| 11–19 | $352 | $369 | $387 |
| 8–10 | $312 | $327 | $343 |
| 4–7 | $216 | $226 | $237 |
| 1–3 | $176 | $184 | $193 |
| Paralegal | $ 96 | $101 | $106 |

■ Plaintiffs rely on *National Wildlife Fed'n v. Hanson*, 859 F.2d 313 (4th Cir.1988), to justify the request for Washington, D.C., market rates rather than rates based on the North Carolina market, the forum for the present action. In *Hanson*, the Fourth Circuit stated that the "community in which the court sits is the appropriate starting point for selecting the proper rate." *Hanson*, 859 F.2d at 317. Billing rates may be adjusted to reflect the locality where the attorneys practice rather than the rates of the forum, however, if a two-part test is satisfied: (1) services of like quality must not be available in the locality where the services are rendered; and (2) the party choosing the attorney from elsewhere must act reasonably in making that choice. *Id.* The court finds that both elements of the *Hanson* test are satisfied in the present case. As stated in an affidavit by Plaintiffs' local counsel, North Carolina law firms that represent plaintiffs in NEPA cases are extremely limited in number. (*See* Pls.' Mem. in Supp. of Mot. for Award of Attys.' Fees and Expenses, Ex. 17 at ¶ 8). The North Carolina firms that might have been able to offer like-quality representation to Plaintiffs either lacked the manpower to

take the case or were unavailable because of commitments to other matters. (*Id.* at ¶ 7). As to the second part of the *Hanson* test, the court finds that Plaintiffs acted reasonably in selecting the Washington, D.C., firm of Terris, Pravlik & Millian, LLP, based on the firm's extensive experience and considerable success in litigating NEPA cases. Therefore, the court finds Plaintiffs' request for Washington, D.C., rates appropriate.[8]

■ The court also finds that the requested hourly rate is reasonable in light of the factors set forth in *Johnson*. Several of the *Johnson* factors are irrelevant to the present case. Specifically, Factors 5, 10 and 11 have no bearing on this court's determination of attorneys' fees. The other factors, however, all affect the determination of what amount constitutes reasonable fees and expenses.

NEPA-related cases typically require considerable time and labor because of the extensive administrative records involved. This case was no different. The administrative record consisted of the draft environmental statement, the FEIS, and local transportation planning documents. All these documents required careful analysis and review by Plaintiffs' counsel. The extensive time commitment necessary to undertake NEPA litigation and to review the pertinent documents required the attorneys involved to pass up other work opportunities. (*See* Pls.' Mem. in Supp. of Mot. for Award of Attys.' Fees and Expenses, Ex. 1, at ¶ 23). Furthermore, NEPA cases involve difficult legal and technical

---

**8.** The rates sought do not differ significantly from those customarily charged by several of the larger firms located in this district. The court has awarded fees in the ranges sought in this case in cases requiring a similar high level of expertise. *See, e.g., ABC, Inc. v. Primetime 24*, 67 F.Supp.2d 558 (M.D.N.C. 1999), *aff'd*, 2000 WL 1648875 (4th Cir. Nov.3, 2000) (unpublished).

In addition, a survey of billing rates presented in the *National Law Journal* indicates that partners at some of North Carolina's larger law firms charged between $380.00 and $425.00 per hour for their services in 1998. (*See* Pls.' Mem. in Support of Their Supplemental Mot. for an Award of Attorneys' Fees and Expenses at Ex. 38).

issues that require a high level of expertise. Plaintiffs' counsel possess the experience and expertise needed to undertake NEPA litigation. Plaintiffs' counsel have been involved in dozens of NEPA cases, and Bruce Terris, Plaintiffs lead counsel, is a recognized leader in environmental litigation with nearly three decades of experience. *See SPIRG v. AT & T Bell Labs.,* 842 F.2d 1436, 1445 (3d Cir.1988) (recognizing Mr. Terris' "superb advocacy skills").

The degree of success obtained by Plaintiffs in the present litigation weighs heavily in favor of granting the amount of attorneys' fees requested. The Supreme Court has stated that the most significant factor in determining an award of fees and expenses is the result obtained in the litigation. *See Hensley,* 461 U.S. at 436, 103 S.Ct. 1933. Plaintiffs' success in the present case is demonstrated by the fact that Plaintiffs obtained essentially all the relief requested in the complaint.

The only factor potentially weighing against Plaintiffs' requested fee amount is the contract between Plaintiffs and Plaintiffs' counsel setting fees at $135.00 per hour and capping total fees at $40,000.00. This contract arguably represents Plaintiffs' counsel's expected fee for the case, and should therefore affect any fee award granted by the court. Courts have held, however, that a contingent fee arrangement supports granting an award of higher fees because of the risk taken by counsel that they would receive no compensation. *See, e.g., Gilliam v. Montgomery Ward & Co., Inc.,* 912 F.Supp. 195, 201 (E.D.Va. 1996), *vacated on other grounds,* 121 F.3d 698, 1997 WL 429454 (4th Cir.1997) ("If counsel accepted the case with the expectation that they would only be paid if Plaintiffs prevailed, the arrangement favors awarding the requested amount because Plaintiffs' attorneys accepted the

case with the grave possibility that they would not receive any compensation."); *Superior Form Bldrs. v. Dan Chase Taxidermy Supply Co., Inc.,* 881 F.Supp. 1021, 1028 (E.D.Va.1994), *aff'd,* 74 F.3d 488 (4th Cir.1996) ("The contingency arrangement favors awarding plaintiff's attorneys the requested value of the services, because they accepted this case with the possibility they would not receive compensation.").

The court finds that the fee arrangement between Plaintiffs and Plaintiffs' counsel amounts to a modified form of contingency arrangement. Plaintiffs' counsel charged far below the market rate they could receive for their services. *Accord SPIRG,* 842 F.2d at 1445 ("Terris' billing rate for its clients falls far short of what the Terris firm could command in the market place."). The expectation of Plaintiffs' counsel was not that $40,000.00 would be the maximum possible compensation for this case, but that $40,000.00 would set the floor and further compensation could be obtained through fee-shifting statutes. To award reduced fees because of the fee arrangement between Plaintiffs and Plaintiffs' counsel would eliminate any incentive for Plaintiffs' counsel to take NEPA-related cases at a reduced rate and would potentially prevent Plaintiffs' counsel from accepting this type of case in the future. After consideration of this and the other *Johnson* factors, the court finds Plaintiffs' requested fee amount to be reasonable.

As to the number of hours spent on the litigation, Federal Defendants object to specific time expenditures by Plaintiffs. Plaintiffs' billing records indicate 160 hours expended in preparing the complaint and approximately 250 hours in preparing the motion for a temporary restraining order. In most cases, such time expenditures would seem to be excessive, but the nature of NEPA litigation compels a different conclusion in this case. Prior

to preparing the complaint and the motion for a temporary restraining order, Plaintiffs had to undertake a comprehensive analysis of the FEIS, a document of considerable length (approximately 400 pages) and technical complexity. The complaint prepared by Plaintiffs was a detailed twenty-five pages, and the motion for a temporary restraining order was forty-eight pages with hundreds of pages of exhibits. To obtain a temporary restraining order a party must show a likelihood of success on the merits or at least substantial questions as to the merits to make them fair ground for litigation. As a result, Plaintiffs had to present substantive aspects of the case at the outset of the litigation. Plaintiffs' motion for a temporary restraining order analyzed the alleged shortcomings of the FEIS in extreme detail. Considering the extensive research required to prepare, and the fine detail presented in, the complaint and motion for a temporary restraining order, Plaintiffs' time expenditures on these aspects of the litigation were reasonable.

 Federal Defendants also dispute other time expenditures by Plaintiffs. In particular, Federal Defendants object to four hours of time Plaintiffs spent on discovery. Federal Defendants argue that NEPA cases typically do not involve discovery because the administrative record contains all of the pertinent factual information. Plaintiffs explain, however, that the four hours of discovery were spent researching whether Plaintiffs could obtain limited discovery prior to Defendants' production of the administrative record. Plaintiffs' counsel believed they were missing pertinent information that would assist them in preparation of the case and spent four hours researching the possibility of obtaining that information. Federal Defendants also object to approximately twenty-nine hours spent by Plaintiffs re-sponding to Defendants' motion to dismiss. Federal Defendants note that no response brief was ever filed by Plaintiffs to the motion to dismiss, as the parties jointly dismissed the action shortly after Defendants filed the motion. Plaintiffs justify the time spent in response to the Defendants' motion to dismiss by stating that, despite the fact no response brief was ever filed, Plaintiffs had to carefully review Defendants' arguments set forth in the motion and analyze the potential validity of those arguments. Plaintiffs' counsel had to advise their clients whether to consent to dismissal, negotiate the terms of the stipulation of dismissal, and discuss with Defendants exactly what would happen with regard to the proposed beltway after dismissal. Plaintiffs contend that this work was essential in arriving at an acceptable joint dismissal agreement.

 In addition to contesting these hours, Federal Defendants argue that approximately nine hours of compensation sought by Plaintiffs for preparation for a TRO/injunction hearing should be denied because no hearing was ever scheduled. While no TRO/injunction hearing was scheduled or held, Plaintiffs acted reasonably in preparing for such a hearing as they had filed a motion for a temporary restraining order and preliminary injunction and had reason to believe that the court would promptly order a hearing. Commencement of beltway construction was imminent, and Plaintiffs were preparing to take immediate action to prevent any irreversible effects of construction. Finally, Federal Defendants make general protestations regarding the amount of hours spent on the fee petition and the number of attorneys who worked on the case. After considering the billing records submitted by Plaintiffs' attorneys and the hours specifically contested by Federal Defendants, the court will not award fees

for six hours of meetings between Plaintiffs' attorney Marsh and officials from the North Carolina Department of Transportation, as this expenditure of time had no direct bearing on Plaintiffs' case against Federal Defendants. Other than these six hours, however, the court finds that Plaintiffs have adequately recorded, justified, and explained the hours expended in litigation.

### CONCLUSION

Although the Eleventh Amendment renders State Defendants immune from an award of attorneys' fees and expenses, Federal Defendants are liable for reasonable fees and expenses under 28 U.S.C. § 2412(b). After a complete examination of Plaintiffs' counsel's billing records, and based on the foregoing analysis, the court will grant to Plaintiffs attorneys' fees and expenses in the amount of Two Hundred Ninety–Five Thousand Thirty–Three and 52/100's Dollars ($295,033.52) payable by Federal Defendants.[9]

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### APPENDIX A

### CALCULATION OF ATTORNEYS' FEES AND EXPENSES

| | Years out of School | Period | Hours | Rates | Fees |
|---|---|---|---|---|---|
| Bruce Terris | 20+ | 6/98–5/99 | 43.50 | $424 | $ 18,444.00 |
| | | 6/99–5/00 | 51.00 | $444 | $ 22,644.00 |
| | | 6/00–5/01 | 28.50 | $466 | $ 13,281.00 |
| | | 6/01–5/02 | 4.00 | $466 | $ 1,864.00 |
| | | | | | $ 56,233.00 |
| Sarah Adams | 4—7 | 6/98–5/99 | 152.75 | $216 | $ 32,994.00 |
| | | 6/99–5/00 | 160.75 | $226 | $ 36,329.50 |
| | | 6/00–5/01 | 109.50 | $237 | $ 25,951.50 |
| | 8—10 | 6/01–5/02 | 48.00 | $343 | $ 16,464.00 |
| | | | | | $111,739.00 |
| Demion Schane | 1—3 | 6/98–5/99 | 283.50 | $176 | $ 49,896.00 |
| | | 6/99–5/00 | 160.75 | $184 | $ 29,578.00 |
| | 4—7 | 6/00–5/01 | 16.75 | $237 | $ 3,969.75 |
| | | | | | $ 83,443.75 |
| Amy Kendall | 1—3 | 6/00–5/01 | 10.00 | $193 | $ 1,930.00 |
| | | | | | $ 1,930.00 |
| Marsh Smith (local counsel) | | | 172.97 | $150 | $ 25,945.50 |
| | | | | | $ 25,945.50 |
| Jim Maxwell (local counsel) | | | 4.00 | $150 | $ 600.00 |
| | | | | | $ 600.00 |

9. The amount represents the $295,933.52 requested by Plaintiffs under the *Laffey* matrix minus $900.00 for Plaintiffs' attorney Marsh's meetings with officials of North Carolina's Department of Transportation. Appendix A, attached to this memorandum opinion, shows the calculation of the lodestar figure.

| AMC (paralegal) | 6/98–5/99 | 2.75 | $ 96 | $ 264.00 |
| | 6/99–5/00 | 49:75 | $101 | $ 5,024.75 |
| | 6/00–5/01 | 4.00 | $106 | $ 424.00 |
| | 6/01–5/02 | 2.00 | $106 | $ 212.00 |
| | | | | $ 5,924.75 |
| AR (paralegal) | 6/99–5/00 | 4.00 | $101 | $ 404.00 |
| | | | | $ 404.00 |
| TDB (paralegal) | 6/01–5/02 | 1.00 | $106 | $ 106.00 |
| | | | | $ 106.00 |

**TOTAL REQUESTED FEES** $286,326.00

| | Hours | Rate | |
| --- | --- | --- | --- |
| **COURT–IMPOSED FEE REDUCTION** | 6.00 | $150 | $ -900.00 |

**COURT–APPROVED FEES** $285,426.00

EXPENSES–TERRIS PRAVLIK & MILLIAN, LLP $ 8,452.26
 –CUNNINGHAM DEDMOND PETERSEN & SMITH, LLP $ 1,155.26

**TOTAL REQUESTED EXPENSES** $ 9,607.52

**TOTAL AWARD OF FEES AND EXPENSES** $295,033.52